Adam J. Krolikowski (SBN 202946)
Woods & Krolikowski
1200 Main Street, Suite H
Irvine, California 92614
Tel. (949) 269-1869
Fac. (949) 269-1868

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CRAIG F. MONTEILH, an individual,

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, a government entity; IRVINE POLICE DEPARTMENT, a government entity; RON CARR, an individual; BARBARA WALLS, an individual   and DOES 1 to 100, inclusive,

Defendants.

Case No. SACV10-00102-JVS (RNB)

**COMPLAINT FOR DAMAGES OF PLAINTIFF CRAIG F. MONTEILH:**

**(1) Violation of 42 USC § 1983**
**(2) Violation of 42 USC § 1985**
**(3) FTCA [Negligence]**

DEMAND OF $10,000,000
JURY TRIAL REQUESTED

COMES NOW PLAINTIFF CRAIG F. MONTEILH, AN INDIVIDUAL, and pleads and avers the following facts, causes of action and prayer for damages against Defendants and each of them:

## JURISDICTION AND VENUE

1.   This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under federal law and the U.S. Constitution. Jurisdiction over the FBI is pursuant to 28 U.S.C. § 1346 and 28 U.S.C § 2679.

1      2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e);

2  the acts and omissions alleged herein occurred in this district.

### PARTIES

4      3.     Plaintiff CRAIG F. MONTEILH is a United States citizen and a

5  resident of the State of California.  Mr. Monteilh was formerly employed by the

6  Federal Bureau of Investigation ("FBI") in the capacity as an undercover informant.

7      4.     Plaintiff is informed, believes and based thereon alleges that Defendant

8  FBI is an agency of the United States Government.  The FBI's headquarters is

9  located at 935 Pennsylvania Avenue, N.W., Washington, DC  20535.

10      5.     Plaintiff is informed, believes and based thereon alleges that Defendant

11  Irvine Police Department is an agency of the City of Irvine, a municipal corporation

12  under its present name, "City of Irvine," organized and operating pursuant to its

13  Charter and the laws of the State of California.

14      6.     Plaintiff is informed, believes and based thereon alleges that Defendant

15  BARBARA WALLS is an individual employed by the FBI at all times relevant

16  herein is an assistant Special Agent in Charge at the Santa Ana branch office of the

17  FBI located at 901 Civic Center Drive West, Santa Ana, California 92701.

18      7.     Plaintiff is informed, believes and based thereon alleges that Defendant

19  RON CARR is at all times relevant herein is a Detective with the Irvine Police

20  Department.

21      8.     The true identities of Defendants DOES 1 to 100, inclusive, are

22  presently unknown, therefore said Defendants are sued herein pursuant to the Federal

23  Rules of Civil Procedure as fictitious persons.

24      9.     Plaintiff is informed and believes that DOES 1 to 100, inclusive, are

25  agents and/or assigns of each other and the named Defendants, and each of them, and

26  have committed such wrongful acts and/or conspired to commit such wrongful acts

27  and are directly and vicariously liable for such acts, as complained of below, which

28  caused damages to Plaintiff as alleged in this Complaint.

COMPLAINT OF CRAIG MONTEILH                                  USDC, CENTRAL DISTRICT

10.    After ascertaining the true identity of a fictitiously named Defendant sued herein as a 'Doe,' Plaintiff will amend this Complaint accordingly.

11.    Defendants' acts damaged Plaintiff in excess of $75,000.  Plaintiff prays for damages as set forth below.

## STATEMENT OF FACTS

12.    Mr. Monteilh began working with the FBI as an undercover informant on or about early 2004 in the investigative program known as Violent Crime, and specifically concerning Narcotics operations, Murder for Hire, and Bank Robberies.

13.    Mr. Monteilh worked with the FBI while directly supervised by his handlers Special Agent Tracy Hanlon and Special Agent Christopher Gicking.

14.    The FBI initially tasked Mr. Monteilh to perform work concerning its Narcotics investigative program of the FBI Criminal Division in early 2004.

15.    Mr. Monteilh was tasked by the FBI concerning the Narcotics investigative program to infiltrate drug trafficking groups and surreptitiously obtain information for use in prosecuting the individual group members for violations of the narcotics laws of the United States.

16.    The Narcotics investigative program was in conjunction with local law enforcement, the Organized Crime Drug Enforcement Task Force (OCDETF), High Intensity Drug Trafficking Area (HIDTA) Programs, and other FBI counter-drug resources which focus on significant criminal enterprises.

17.    The undercover informant work Mr. Monteilh performed under the Narcotics investigative program kept illicit drugs off the streets and resulted in arrests and convictions.

18.    The FBI and its agents commended the work performed by Mr. Monteilh and increased his tasking orders to include the Murder For Hire investigative program.

19.    The FBI Murder For Hire investigative program formally began when Murder For Hire became a specific federal crime in 1958.  The FBI typically works

between 70 and 90 cases a year. The Murder For Hire investigations range from spurned lovers out for revenge to more organized gangs and crime groups that want to take out rivals and snitches, with the ultimate goal being prevention.

20.   The FBI tasked Mr. Monteilh concerning the Murder For Hire investigative program to work jointly with local authorities through the Violent Crime Task Force in order to infiltrate target areas in the community, surveil and gather information. Mr. Monteilh was informed the FBI prides itself for being able to tap into federal racketeering laws as well as its undercover and surveillance capabilities and staple of informants.

21.   The undercover informant work Mr. Monteilh performed under the Murder For Hire investigative program saved lives and resulted in arrests and convictions.

22.   The FBI and its agents commended the work performed by Mr. Monteilh and increased his tasking orders to include the Bank Robberies investigative program.

23.   Mr. Monteilh's tasking orders concerning the Bank Robberies investigative program included, but is not limited to, infiltrating, surveilling and gathering intelligence on the groups of persons who planned to commit robbery, burglary, larceny or similar crimes against federally insured savings and loans and federal credit unions, under the jurisdiction of the FBI.

24.   Mr. Monteilh's tasking orders concerning the Bank Robberies investigative program included working with state and local counterparts throughout Violent Crimes Task Forces. Mr. Monteilh was informed this was to better leverage the FBI's limited resources.

25.   The undercover informant work Mr. Monteilh performed under the Bank Robberies investigative program resulted in arrests and convictions.

26.   The FBI and its agents commended the work performed by Mr. Monteilh and increased his tasking orders to include the Murder For Hire

1 investigative program.

2     27.    Mr. Monteilh, as part of his taskings as an undercover informant for the

3 FBI, engaged in a sting operation on or about March 2006.

4     28.    The sting operation involved the purchase, sale and distribution of

5 illicit performance enhancing drugs (commonly referred to as steroids) in the County

6 of Orange and the trafficking of marijuana smuggled through Canada, targeting

7 individual suspects including but not limited to Roxanne Veal, Danielle Brinkman

8 and Mary Brandolino Genovese. Mr. Montielh was gaining the confidence of

9 individual suspects and, as he had done in the past, was surveilling and gathering

10 intelligence for the eventual arrest and conviction of the suspects.

11     29.    Mr. Monteilh's involvement in the sting operation was placed on hold,

12 however, because the FBI determined he was needed for a special operation dealing

13 with National Security and Counterterrorism.

14     30.    Mr. Monteilh was informed that the FBI is part of a vast national and

15 international campaign dedicated to defeating terrorism, working hand-in-hand with

16 partners in law enforcement, intelligence, the military, and diplomatic circles to

17 neutralize terrorist cells and operatives here in the U.S. and to help dismantle

18 terrorist networks worldwide.

19     31.    Specifically, Mr. Monteilh was informed that the work, should he

20 choose to accept the assignment, would be for the purpose of infiltrating, surveilling

21 and obtaining intelligence to take down high priority targets including but not

22 limited to USAMA BIN LADEN, AYMAN AL-ZAWAHIRI, ABDELKARIM

23 HUSSEIN MOHAMED AL-NASSER, and ADAM GADHAN.

24     32.    Mr. Monteilh, inspired by the opportunity to assist in the protection of

25 this great nation, agreed to be moved from working with the Violent Crime

26 investigative umbrella to the National Security Branch, Counterterrorism Division,

27 of the FBI.

28     33.    The FBI assigned two new handlers, Special Agent Kevin Armstrong

1 | and Special Agent Paul Allen with the FBI Orange County Joint Terrorism Task
2 | Force, to deliver tasking orders to Mr. Monteilh.

3 | 34. From July 2006 to October 2007, the FBI tasking orders for Mr.
4 | Monteilh concerning the National Security Branch, Counterterrorism Division,
5 | implemented him as a human intelligence operative within a secret surveillance
6 | program aimed at spying on the Islamic community in the counties of Orange, Los
7 | Angeles and San Bernardino.

8 | 35. Mr. Monteilh was informed the secret surveillance program was called
9 | "Operation Flex" and was initiated pursuant to Executive Order 12346. The FBI
10 | tasked Mr. Monteilh with assuming the identity of Farouk al-Aziz, a new Muslim
11 | convert of Syrian and French descent, under code name "Oracle."

12 | 36. Operation Flex was implemented through the National Security Branch
13 | of the FBI, using Mr. Monteilh as the center piece of this covert surveillance
14 | program, to continue and extend its post-9/11 wider surveillance program.

15 | 37. The Assistant United States Attorney Dierdra Elliott gave Mr. Monteilh
16 | special permission, by and through a signed Federal document, to engage in jihadist
17 | rhetoric, including but not limited to conducting terrorist operations, possessing
18 | weapons and initiating conversations to further terrorist acts against the United
19 | States.

20 | 38. Mr. Monteilh met with Special Agent Kevin Armstrong and Special
21 | Agent Paul Allen to receive his tasking orders. Mr. Monteilh was tasked by the FBI
22 | with infiltrating mosques in the counties of Orange, Los Angeles and San
23 | Bernardino, a task he successfully achieved.

24 | 39. Between July 2006 and October 2007, Mr. Monteilh was tasked by the
25 | FBI with learning to read, write and speak Arabic. Mr. Monteilh was informed that
26 | this particular tasking order would enhance Mr. Monteilh's stature and believability
27 | within the Islamic community. This was a task Mr. Monteilh worked on and
28 | achieved through self-instruction, Arabic Language Program(s), and training through

COMPLAINT OF CRAIG MONTEILH

USDC, CENTRAL DISTRICT

1 | Berlitz, even receiving certificate(s) for his success.

2 |     40.    The handlers, Special Agent Kevin Armstrong and Special Agent Paul
3 | Allen, delivered FBI tasking orders to Mr. Monteilh to make detailed notes and
4 | supplemental notes of any intelligence gathered while spying on the Islamic
5 | community under Operation Flex. The detailed notes included but are not limited
6 | to Muslims he interacted with, content of conversations, and places Mr. Monteilh
7 | entered such as mosques, homes, restaurants, businesses, schools, parks, vehicles,
8 | offices, gyms and hotels. The more "sensitive" details, per the tasking orders, were
9 | written on a separate sheet entitled "supplemental notes." The FBI tasking orders
10 | further directed Mr. Monteilh to record every action and word he could find out.

11 |     41.    Mr. Monteilh was highly trained by the FBI to use cutting edge and
12 | sophisticated electronic surveillance devices and equipment to assist in the task of
13 | spying on the Islamic community. As per the FBI tasking orders, Mr. Monteilh
14 | surveilled individual Muslims and the Islamic community in general by using the
15 | electronic surveillance devices and equipment by surreptitiously recording Muslims
16 | speaking in or around places such as mosques, homes, restaurants, businesses,
17 | schools, parks, vehicles, offices, gyms and hotels. Mr. Monteilh was successful in
18 | performing these tasks.

19 |     42.    The FBI and its agents commended the work performed by Mr.
20 | Monteilh and increased the scope of the tasking orders given to Mr. Monteilh.

21 |     43.    Mr. Monteilh was tasked by the FBI with becoming skilled in the
22 | Hadith and the Quran, the five pillars, and the sixth pillar of Islam.

23 |     44.    Mr. Monteilh was tasked by the FBI with gaining the confidence of
24 | high priority targets, leading prayer in the mosques, dating Muslim women and
25 | engaging in sexual relations with Muslim women. Mr. Monteilh was successful in
26 | performing these tasks.

27 |     45.    The FBI and its agents commended the work performed by Mr.
28 | Monteilh and increased the scope of the tasking orders given to Mr. Monteilh. Mr.

COMPLAINT OF CRAIG MONTEILH            USDC, CENTRAL DISTRICT

1   Monteilh was tasked by the FBI with infiltrating foreign terrorist camps and Islamic

2   schools.

3       46.    On or about March 2, 2007, Mr. Monteilh received a telephone call

4   from his handler Special Agent Paul Allen. Mr. Monteilh was informed by Special

5   Agent Paul Allen that he had received a call from an Irvine Police Officer assigned

6   to the Orange County Joint Terrorism Task Force informing him that there was an

7   active investigation on Mr. Monteilh for grand theft. Mr. Monteilh was informed the

8   complainants were the same person(s) he had infiltrated in the March 2006 sting

9   operation.

10       47.    The FBI, through Special Agent Paul Allen, told Mr. Monteilh that he

11   would be receiving a call from Irvine Detective Ron Carr and upon that call an

12   interview would be scheduled by the Detective.

13       48.    The FBI, through Special Agent Paul Allen, further instructed Mr.

14   Monteilh that he was by no means to divulge his status as a confidential informant

15   to Detective Carr because it would jeopardize "operational security" of Operation

16   Flex.

17       49.    Mr. Monteilh explained to the FBI, through Special Agent Paul Allen,

18   that Detective Carr's investigation concerns prior work with the Narcotics

19   investigative program of the Criminal Division and that disclosing his confidential

20   informant status to Detective Carr would vindicate Mr. Monteilh as it had when such

21   investigations by local law enforcement occurred before.

22       50.    The FBI, through Special Agent Paul Allen, said all this was

23   understood and assured Mr. Monteilh the grand theft case against him would be

24   dissolved in the "exit strategy" of his participation in "Operation Flex."

25       51.    On or about March 7, 2007, Detective Carr interviewed Mr. Monteilh

26   in Irvine, California. At the close of the interview, Detective Carr told Mr. Monteilh,

27   "I am going to get you."

28       52.    Mr. Monteilh told the FBI about the interview and the statements made

by Detective Carr. The FBI again instructed Mr. Monteilh to mislead detectives and outright lie to detectives for the sake of "operation security" all the while assuring Mr. Monteilh the grand theft case would be taken care of in the exit strategy. The FBI continued to give such assurances for the following several months.

53.     On or about June 2007 persons at the Islamic Center of Irvine became suspicious of Mr. Monteilh and sought a restraining order against him in the Superior Court of California, County of Orange, Harbor Justice Center, concerning acts he performed under his tasking orders.

54.     Mr. Monteilh was informed the effect of the restraining order would limit his civil rights and become part of his permanent criminal history kept at the Department of Justice on every California and/or United States citizen.

55.     Mr. Monteilh shared his concerns about the restraining order with the FBI, but again was instructed not to take any action. Mr. Monteilh was directed by the FBI not to oppose the restraining order and again assured that the restraining order would be taken care of in the the "exit strategy" of his participation in "Operation Flex."

56.     While the grand theft investigation of Detective Carr was being conducted, Mr. Monteilh was on probation through Case No. KA059040 in the Superior Court of California, County of Los Angeles, West Covina Courthouse. Mr. Monteilh's Probation Officer, Officer Medina, was aware of Detective Carr's investigation of Mr. Monteilh, but told Mr. Monteilh's handlers he would not arrest Mr. Monteilh because he knew Mr. Monteilh'S involvement was that of an FBI informant.

57.     Mr. Monteilh, nonetheless, was concerned about remaining on probation and went to the West Covina Courthouse on April 13, 2007, to ask for early termination of his probation, which was denied. Mr. Monteilh reported this to his FBI handlers. Thereafter, Special Agent Kevin Armstrong (a former Assistant United States Attorney) called Los Angeles County District Attorney Steve Cooley

1  directly to have Mr. Monteilh's probation terminated early. Mr. Monteilh was

2  informed that this was necessary because any felony investigation of a probationer

3  automatically disqualifies them from consideration for early termination of

4  probation.

5      58.    On August 20, 2007, Deputy District Attorney Linda A. Chilstrom

6  moved on behalf of the People of the State of California for early termination of the

7  probation of Mr. Monteilh, stating that Mr. Monteilh had given "very, very valuable

8  information that has proven essential in an FBI prosecution."

9      59.    The undercover informant work Mr. Monteilh performed under

10  Operation Flex resulted in arrests and prosecutions, including but not limited to

11  Ahmadullah Sais Niazi. Mr. Monteilh's role as an informant was revealed by

12  testimony of Special Agent Thomas J. Ropel III at the bail hearing of Ahmadullah

13  Sais Niazi.

14      60.    Part of the information discovered by Mr. Monteilh also concerned the

15  storage of suspected bomb making materials at a certain mosque, which Mr.

16  Monteilh reported to Special Agent Kevin Armstrong, Special Agent Paul Allen and

17  Assistant Special Agent in Charge Barbara Walls.

18      61.    Mr. Monteilh is informed that Assistant Special Agent in Charge

19  Barbara Walls did not act on the information concerning bomb making materials for

20  over three (3) weeks. Mr. Monteilh is informed that when Assistant Special Agent

21  in Charge Barbara Walls finally obtained the necessary warrants to investigate the

22  bomb making materials, they were no longer there. Mr. Monteilh is informed that

23  Assistant Special Agent in Charge Barbara Walls was embarrassed and instead of

24  accepting responsibility for her error in judgment, called Mr. Monteilh a liar. Mr.

25  Monteilh is informed it is at that point that Assistant Special Agent in Charge

26  Barbara Walls determined she would remove Mr. Monteilh from the FBI

27  Counterterrorism program and thereafter began to conspire with Detective Ron Carr

28  and DOES 11 through 20 to set Mr. Monteilh up for felony prosecution and

1 conviction.

2     62.    On or about mid-March 2007, Detective Carr had been instructed
3 through members of the Orange County Joint Terrorism Task Force at the Irvine
4 Police Department not to pursue the grand theft case against Mr. Monteilh because
5 he was an asset. On or about September 17, 2007, Assistant Special Agent in Charge
6 Barbara Walls communicated with Detective Carr and gave him the "green light" to
7 proceed with seeking the arrest of Mr. Monteilh, despite their knowledge of his
8 status and history as an FBI informant.

9     63.    Detective Carr recontacted Mr. Monteilh on or about September 24,
10 2007, and taunted him, saying I can arrest you whenever I want for violating your
11 probation. Detective Carr became furious when he was informed by Mr. Monteilh
12 that his probation was terminated in August 2007.

13     64.    Mr. Monteilh was concerned and asked the FBI, through his handlers,
14 how the exit strategy was going to be implemented, including but not limited the
15 payment of arrearage, severance, readjustment to the community, new identity,
16 removing the restraining order and dissolving the grant theft investigation. The FBI
17 offered no response and the handlers said, "I don't know."

18     65.    Mr. Monteilh is informed that in October 2007, Assistant Special Agent
19 in Charge Barbara Walls orchestrated the diminishing of Mr. Monteilh's
20 involvement in Operation Flex as the high priority target Ahmadullah Sais Niazi
21 already had a sealed Federal indictment against him.

22     66.    Mr. Monteilh is further informed that Assistant Special Agent in
23 Charge Barbara Walls became paranoid that Mr. Monteilh would speak to the press
24 about the illegal activities directed by Assistant Special Agent in Charge Barbara
25 Walls' office of the National Security Branch of the FBI. Mr. Monteilh is informed
26 that the illegal activities Assistant Special Agent in Charge Barbara Walls was
27 concerned about coming to light were racial profiling, religious profiling, instigating
28 extremist rhetoric to entrap Muslims, blackmailing Muslims to become informants,

1  the breach of security at Berlitz language center, Mr. Monteilh being armed to attend
2  mosques, Mr. Monteilh being told to engage in sexual relations with Muslim women,
3  misuse of surveillance devices in the Islamic community and warrantless
4  wiretapping.

5      67.    In November 2007, the Irvine Police Department SWAT team
6  assembled in strike formation outside the home of Mr. Monteilh.  Mr. Monteilh,
7  alarmed, quickly called his handlers on the telephone and told them what he saw, and
8  moments later heard the words "stand down" and they left. Mr. Monteilh asked what
9  that was about and the handlers said, "I don't know." Mr. Monteilh is informed that
10  Detective Carr and Assistant Special Agent in Charge Barbara Walls conspired and
11  were responsible for this SWAT team incident occurring.

12      68.    On December 3, 2007, Detective Carr filed an "Order Requiring Penal
13  Code Section 1275.1 Hearing and Notification of the District Attorney" for a warrant
14  for the arrest of Craig F. Monteilh.  In the filing, Detective Carr requested that
15  Deputy District Attorney Yvette Patko be present at every hearing and that a hold on
16  the release from custody be placed on Mr. Monteilh.

17      69.    On December 12, 2007, Mr. Monteilh was surprised by an arrest and
18  search warrant at his home by Detective Carr.  Mr. Monteilh was arrested.

19      70.    Mr. Monteilh was informed that the Deputy District Attorney Yvette
20  Patko was seeking a conviction and sentence of 5 years 8 months for Craig Monteilh.
21  Mr. Monteilh's bail was set at $250,000 per the direction of Detective Carr and/or
22  Assistant Special Agent in Charge Barbara Walls.  Mr. Monteilh is informed that
23  Assistant Special Agent in Charge Barbara Walls made disclosure to Deputy District
24  Attorney Yvette Patko of the financial status and records of payment from the FBI
25  to Mr. Monteilh.

26      71.    Mr. Monteilh is informed that on the day of the arraignment, Deputy
27  District Attorney Yvette Patko went to lunch with the complainant Danielle
28  Brinkman, one of the suspects from the sting operation from March 2006.

72.     At the direction of Assistant Special Agent in Charge Barbara Walls, Mr. Monteilh was visited by at the Orange County Jail by Special Agent Kevin Armstrong and FBI Legal Counsel Steven Kramer. Mr. Monteilh was instructed by the FBI not to take his case to trial because he had signed a document FBI Legal Counsel Steven Kramer referred to as the "Non-Disclosure Agreement" and would face a lengthy time in Federal Prison if he did so.

73.     Mr. Monteilh was forced, under the color of authority by the FBI and its agents, to plead guilty to grand theft, suffer a felony conviction and endure sixteen (16) months in prison for work performed at the direction of the FBI.

74.     While incarcerated at the Orange County Jail, Mr. Monteilh was approached by the FBI through Special Agent Tracy Hanlon with tasking orders from the FBI Organized Crime Division, Balkan Criminal Enterprises Group.

75.     The FBI Organized Crime Division, Balkan Criminal Enterprises Group, tasked Mr. Monteilh with assisting in an undercover operation and surveillance of Voicu Gheorghe Gruia. Orange County Deputy District Attorney Joe Williams is quoted as saying Voicu Gheorghe Gruia is "a principal figure in the Romanian Mafia."

76.     Mr. Monteilh worked undercover using the identity of a Hungarian-French immigrant, the grandson of a man who was a war hero in the Hungarian Revolution of 1956. Over a period of weeks, Mr. Monteilh acquired the confidence and trust of Voicu Gheorghe Gruia, leading to the FBI's first acquisition of a sophisticated skimming device used to steal money from ATM machines and the arrests of Gheorghina Gruia and Joseph Deaconn. Mr. Monteilh is informed they are all involved in the Romanian Mafia and considered to be extremely dangerous.

77.     Mr. Monteilh, using the intelligence gathered through Voicu Gheorghe Gruia and his cohorts in jail, was able to thwart the murder for hire plans to assassinate Chad Taranteau, the primary witness against Voicu Gheorghe Gruia.

78.     After the successful completion of the tasking orders for the FBI

1   Organized Crime Division, Balkan Criminal Enterprises Group concerning Voicu

2   Gheorghe Gruia, Mr. Monteilh was approached by Special Agent Kevin Armstrong

3   on behalf of the National Security Branch, Counterterrorism Division, to once again

4   implement him as a human intelligence operative spying on the Islamic community

5   within the Orange County Jail.

6       79.   The FBI provided tasking orders that included taking on the identity of

7   Omar Moussa, an Algerian-French jihadist, and infiltrating, surveilling and gathering

8   intelligence on Muslims in jail.  Mr. Monteilh, through his work pursuant to those

9   tasking orders, uncovered the early stages of a terrorist plot involving several

10  persons incarcerated in the Orange County Jail including but not limited to Otto Paul

11  Burgi, Tyrone Rye and Khalil Hamdan.

12      80.   Mr. Monteilh reported this information to Special Agent Kevin

13  Armstrong and later directly to Assistant Special Agent in Charge Barbara Walls.

14  Despite all the prior completed tasks, valuable information and successful

15  investigations, Assistant Special Agent in Charge Barbara Walls told Mr. Monteilh

16  that she did not believe him.

17      81.   Later the same day, the Irvine Police Department officers went to speak

18  with Otto Paul Burgi, Tyrone Rye and Khalil Hamdan and revealed the very

19  information Mr. Monteilh had obtained from each of them.  At that point, Mr.

20  Monteilh's life was placed in great danger.

21      82.   Mr. Monteilh is informed that thereafter word spread at the Orange

22  County Jail and later, when Mr. Monteilh was transferred from the Orange County

23  Jail, to Wasco State Prison that Mr. Monteilh was either an informant or a "snitch."

24  Mr. Monteilh is informed that his life was in danger as the Muslim extremists had

25  ordered a "fatwa," the Romanian Mafia had ordered a "hit," the Mexican Mafia had

26  ordered a "hit," and the White Supremacists were given a "green light" on Craig F.

27  Monteilh.

28      83.   Mr. Monteilh communicated his grave concerns over the threats on his

COMPLAINT OF CRAIG MONTEILH                                          USDC, CENTRAL DISTRICT

1  life to the FBI and asked for the FBI to arrange for protective custody, but instead

2  he was left in general population, thereby exposed to constant danger of being killed.

3      84.    On April 27, 2008, while at Wasco prison, Mr. Monteilh was attacked

4  several times, including a stabbing attack with a shank by members of P.E.N.1.

5  ("Public Enemy Number One") the main white supremacist group in prison.

6      85.    The stabbing attack resulted in deep lacerations to the left and right legs

7  of Mr. Monteilh, which were then sprayed with mace by the prison guards, and left

8  untreated by prison authorities at Wasco. Resulting from the attack, Mr. Monteilh

9  has permanent scars on his legs and reduced mobility.

10      86.    On May 2, 2008, a Captain of the Wasco Prison Guards interviewed

11  Mr. Monteilh for Title 115 prison rules violations. Mr. Monteilh is aware that in his

12  report he wrote that Mr. Monteilh was an FBI informant.

13      87.    Afterwards, Mr. Monteilh was transferred from Wasco State Prison to

14  Coalinga Community Correctional Facility. Again, Mr. Monteilh asked for the FBI

15  to arrange protective custody, but he was left in general population and exposed to

16  constant danger of being killed. Mr. Monteilh was physically attacked several more

17  times while at Coalinga, each time fighting for his life.

18      88.    Mr. Monteilh was finally release from prison on August 16, 2008. Mr.

19  Monteilh's parole was terminated on September 15, 2009.

20      89.    Mr. Monteilh learned on or about January 13, 2010, from local law

21  enforcement that Joseph Deaconn of the Romanian Mafia, who had vowed to cut off

22  the head of Craig Monteilh, had become a fugitive on December 7, 2009. To the

23  date of this Complaint, the FBI has not contacted Mr. Monteilh to make him aware

24  that the man who vowed to cut off his head had become a fugitive and believed to

25  be at large in California.

26      90.    Mr. Monteilh continues to live in fear for his life and with the mental

27  and physical scars caused by Defendants and each of them. Mr. Monteilh seeks

28  damages for the violation of his rights and injuries, in excess of $10,000,000, as set

1 | forth in the prayer below.

## FIRST CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS - 42 USC § 1983

## AGAINST DEFENDANTS CARR AND

## IRVINE POLICE DEPARTMENT AND DOES 1 - 30

91.   Plaintiff incorporates all the above stated paragraphs, and each of them, as though set forth in their entirety herein.

92.   Defendants Ron Carr, the Irvine Police Department and DOES 1 - 30 violated 42 USC § 1983, by, through and with their agents, by acting under color of law and subjecting Craig F. Monteilh to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States of America.

93.   Defendants Ron Carr, the Irvine Police Department and DOES 1 - 30, deprived Mr. Monteilh of his 4th Amendment right to be secure in his person against unreasonable seizures, as set forth above.

94.   Defendants Ron Carr, the Irvine Police Department and DOES 1 - 30, deprived Mr. Monteilh of his 5th Amendment rights to life, liberty, and due process by failing to provide him his *Miranda* warning.

95.   Defendants Ron Carr, the Irvine Police Department and DOES 1 - 30, deprived Mr. Monteilh of his 8th Amendment right to be free from excessive bail, as set forth above.

96.   Defendants Ron Carr, the Irvine Police Department and DOES 1 - 30, deprived Mr. Monteilh of his immunity granted him under the laws of the United States of America to act as an informant for the FBI, as referenced by documents Mr. Monteilh had signed and relied upon at the direction of the FBI Criminal and Counterterrorism Divisions.

97.   Defendants Ron Carr, the Irvine Police Department and DOES 1 - 30, are liable to Mr. Monteilh for damages for the deprivation of his rights as prayed for below.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS - 42 USC § 1985
## AGAINST DEFENDANT WALLS, CARR,
## IRVINE POLICE DEPARTMENT AND DOES 31 - 60

98.   Plaintiff incorporates all the above stated paragraphs, and each of them, as though set forth in their entirety herein.

99.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and DOES 31 - 60, and each of them, conspired for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice in California with the intent to deny Mr. Monteilh equal protection of the laws.

100.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and DOES 31 - 60, and each of them, conspired to deprive Mr. Monteilh of his 4th Amendment right to be secure in his person against unreasonable seizures, as set forth above.

101.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and DOES 31 - 60, and each of them, conspired to deprive Mr. Monteilh of his 5th Amendment rights to life, liberty, and due process by ordering him not to contest the restraining order or the grand theft case, as set forth above.

102.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and DOES 31 - 60, and each of them, conspired to deprive Mr. Monteilh of his 8th Amendment right to be free from excessive bail, as set forth above.

103.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and DOES 31 - 60, and each of them, conspired to deprive Mr. Monteilh of his immunity granted him under the laws of the United States of America to act as an informant for the FBI, as referenced by documents Mr. Monteilh had signed and relied upon at the direction of the FBI Criminal and Counterterrorism Divisions.

104.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and DOES 31 - 60 engaged in conspiracy concerning the above stated acts, and caused

1  to be done acts in furtherance of the object of such conspiracy, whereby Mr.

2  Monteilh was injured in his person and property, and deprived of having and

3  exercising his rights and privileges as a citizen of the United States.

4       105.   Defendants Barbara Walls, Ron Carr, the Irvine Police Department and

5  DOES 31 - 60 are liable to Mr. Monteilh for damages for his injuries and the

6  deprivation of his rights as prayed for below.

## THIRD CAUSE OF ACTION

### FTCA - 28 USC § 2679, et seq. [NEGLIGENCE]

### AGAINST DEFENDANTS FBI AND DOES 61 - 100

10       106.   Plaintiff incorporates all the above stated paragraphs, and each of them,

11  as though set forth in their entirety herein.

12       107.   The Federal Tort Claim Act (FTCA) authorizes recovery for personal

13  injury, death, or property damage caused by negligent federal government employees

14  acting within the scope of their federal employment.

15       108.   The liability of the FBI and DOES 61 - 100 is determined by the law of

16  the state of California pursuant to 28 USC § 2679.

17       109.   The negligence claims of Craig F. Monteilh against the FBI and DOES

18  61 - 100 are allowed pursuant to 28 U.S.C. § 2680.

19       110.   Plaintiff Craig F. Monteilh seeks the remedy of money damages for the

20  negligent acts and/or omissions of federal government employees as set forth in the

21  above-stated paragraphs.

22       111.   Plaintiff Craig F. Monteilh presented an administrative tort claim to the

23  Defendant FBI, within two years of accrual of the claim, for adjudication before

24  filing this suit in federal court.

25       112.   In the administrative tort claim presented to the FBI, Plaintiff Craig F.

26  Monteilh demanded $10,000,000, the same amount demanded herein.

27       113.   Plaintiff Craig F. Monteilh has filed the instant Complaint within six

28  months of the agency's denial of the administrative tort claim.

114.   Defendant FBI and DOES 61 - 100 were aware Plaintiff Craig F. Monteilh was working as an informant for the FBI.

115.   Based upon the five (5) year agency relationship between the FBI and Plaintiff Craig F. Monteilh, the signed Federal documents describing the agency relationship, and the representation made by the FBI concerning its duties to Plaintiff Craig F. Monteilh for his work as an informant, Defendant FBI and DOES 61 - 100 had a legal duty to exercise reasonable care in the handling of Plaintiff Craig F. Monteilh as an informant.

116.   Plaintiff Craig F. Monteilh is entitled to all rights, immunities and privileges as a United States citizen.

117.   Defendants FBI and DOES 61 - 100 deprived Mr. Monteilh of his 4th Amendment right to be secure in his person against unreasonable seizures, as set forth above.

118.   Defendants FBI and DOES 61 - 100 deprived Mr. Monteilh of his 5th Amendment rights to life, liberty, and due process by ordering him not to contest the restraining order or the grand theft case, as set forth above.

119.   Defendants FBI and DOES 61 - 100 deprived Mr. Monteilh of his 8th Amendment right to be free from excessive bail, as set forth above.

120.   Defendants FBI and DOES 61 - 100 deprived Mr. Monteilh of his immunity granted him under the laws of the United States of America to act as an informant for the FBI, as referenced by documents Mr. Monteilh had signed and relied upon at the direction of the FBI Criminal and Counterterrorism Divisions.

121.   Defendant FBI and DOES 61 - 100 had a legal duty not to cause Plaintiff Craig Monteilh to be deprived of his rights under the Constitution of the United States of America and suffer physical and emotional distress injuries.

122.   Defendant FBI and DOES 61 - 100 , their respective agents and/or employees negligently and/or recklessly breached their duty of care to Plaintiff Craig F. Monteilh by failing to prevent the foreseeable harm described in the preceding

1  paragraphs, including but not limited to the restraining order, the grand theft

2  conviction, being placed in general population in prison, being attacked and stabbed,

3  and living in fear for his life.

4      123.   The acts and omissions of Defendant FBI and DOES 61 - 100 were the

5  proximate and legal cause of damages to Plaintiff Craig F. Monteilh, reason by

6  which Defendants have to compensate all the damages they have caused, including

7  but not limited to damages for physical injuries, lost wages, economic damages and

8  emotional distress.

9      124.   Defendants FBI and DOES 61 - 100 are liable to Mr. Monteilh for

10  damages of $10,000,000 as prayed for below.

## **PRAYER**

12      WHEREFORE, Plaintiff Craig F. Monteilh prays for judgment against

13  Defendants, and each of them, as follows:

14  FIRST CAUSE OF ACTION:

15  1.   For general damages in a sum according to proof at trial in excess of $75,000;

16  2.   For special damages in a sum according to proof at trial in excess of $75,000;

17  3.   For economic damages in a sum according to proof at trial in excess of

18     $75,000;

19  4.   For consequential damages in a sum according to proof at trial in excess of

20     $75,000;

21  5.   For attorneys' fees per statute;

22  6.   For such other relief as the Court deems just and proper.

23  SECOND CAUSE OF ACTION:

24  7.   For general damages in a sum according to proof at trial in excess of $75,000;

25  8.   For statutory damages in a sum according to proof at trial in excess of

26     $75,000;

27  9.   For economic damages in a sum according to proof at trial in excess of

28     $75,000;

COMPLAINT OF CRAIG MONTEILH                                          USDC, CENTRAL DISTRICT

10.  For consequential damages in a sum according to proof at trial in excess of $75,000;

11.  For attorneys' fees per statute;

12.  For such other relief as the Court deems just and proper.

THIRD CAUSE OF ACTION:

13.  For general damages in the amount of $10,000,000.

14.  For economic damages in a sum according to proof at trial;

15.  For consequential damages in a sum according to proof at trial;

16.  For such other relief as the Court deems just and proper.

WOODS & KROLIKOWSKI

Dated: January 21, 2010

Adam J. Krolikowski, Esq.
For Plaintiff

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>CRAIG F. MONTEILH | **DEFENDANTS**<br>FEDERAL BUREAU OF INVESTIGATION, a government entity; IRVINE POLICE DEPARTMENT; a government entity; RON CARR, an individual; BARBARA WALLS, an individual;  and DOES 1 to 100, inclusive |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Adam J Krolikowski (SBN 202946)<br>Woods & Krolikowski<br>1200 Main Street, Suite H, Irvine, CA 92614  T. 949-269-1869 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No      ☒ **MONEY DEMANDED IN COMPLAINT: $** 10,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
42 USC §§1983; 1985  and  Federal Tort Claim Act :  Deprivation of rights and negligence.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☒ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:  SACV10- 00102

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                                                    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                                                    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                                                    ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ORANGE | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
       **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles and Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____     Date  1/20/10

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV10- 102 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Adam J Krolikowski (SBN 202946)
Woods & Krolikowski
1200 Main Street, Suite H
Irvine, CA 92614
T. 949-269-1869  F. 949-269-1868

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CRAIG F. MONTEILH, an individual

PLAINTIFF(S)

CASE NUMBER

SACV10-102-JVS(RNB)

FEDERAL BUREAU OF INVESTIGATION, a
government entity; IRVINE POLICE
DEPARTMENT, a government entity;
RON CARR, an individual;
BARBARA WALLS an      DEFENDANT(S).
individual, and DOES 1 to 100 inclusive

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _____, whose address is _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___2 JAN 2010___          By: _____
                                        Deputy Clerk

                                        (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Adam J Krolikowski (SBN 202946)
Woods & Krolikowski
1200 Main Street, Suite H
Irvine, CA 92614
T. 949-269-1869  F. 949-269-1868

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CRAIG F. MONTEILH, an individual

PLAINTIFF(S)

v.

FEDERAL BUREAU OF INVESTIGATION, a
government entity; IRVINE POLICE
DEPARTMENT, a government entity;
RON CARR, an individual;
BARBARA WALLS an
individual, and DOES 1 to 100 inclusive

DEFENDANT(S).

CASE NUMBER

SACV10 102- JVS (RNBx)

**SUMMONS**

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __60__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _____, whose address is _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __2 2 JAN 2010__

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                 SUMMONS