1  Adam J. Krolikowski (SBN 202946)
   Woods & Krolikowski
2  1200 Main Street, Suite H
   Irvine, California 92614
3  Tel.  (949) 269-1869
   Fac. (949) 269-1868
4  E-mail: ajk4law@yahoo.com

5  ATTORNEYS FOR PLAINTIFF
   CRAIG F. MONTEILH

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  CRAIG F. MONTEILH, an            )  Case Number:
    individual,                     )  SACV10-00102-JVS(RNBx)
12                                   )
              Plaintiff,             )  **SECOND AMENDED**
13                                   )  **COMPLAINT FOR DAMAGES**
                                     )  **OF PLAINTIFF CRAIG F.**
14                                   )  **MONTEILH:**
    v.                               )
15                                   )  **(1) Violation of 42 USC § 1983**
                                     )  **(2) Violation of 42 USC § 1983**
16                                   )  **(3) Violation of Civil Rights**
    UNITED STATES; IRVINE           )  **(4) Negligence**
17  POLICE DEPARTMENT, a            )  **(5) Negligent Infliction of**
    government entity; RON CARR,    )      **Emotional Distress**
18  an individual; BARBARA          )
    WALLS, an individual    and     )
19  DOES 1 to 100, inclusive,       )
                                     )  DEMAND OVER $10,000,000
20            Defendants.            )  JURY TRIAL REQUESTED
                                     )
21  ─────────────────────────────── )

22  COMES NOW PLAINTIFF CRAIG F. MONTEILH, AN INDIVIDUAL,

23  and pleads and avers the following facts, causes of action and

24  prayer for damages against Defendants and each of them:

25                 **JURISDICTION AND VENUE**

26       1.      This court has jurisdiction over this action pursuant to

27  28 U.S.C. § 1331, because Plaintiff's claims arise under federal law

28  and the U.S. Constitution. Jurisdiction over the FBI is pursuant to

1    States; and

2    c.    issuance of vague, confusing, and contradictory

3    policies concerning the use of force and

4    interrogations that are inconsistent with the

5    requirements of the fourth, fifth, sixth, and eighth

6    amendments of the United States Constitution.

7    127.    Defendant City of Irvine, under color of law, intentionally,

8    negligently, and with complete and deliberate indifference for

9    Plaintiff's rights, authorized, permitted, and tolerated the custom

10   and practice of the unconstitutional and excessive use of force and

11   interrogation practices by members of the Irvine Police Department

12   and, in particular by Defendant Carr and at the direction of the City

13   of Irvine Police Chief Maggard, by failing to:

14   a.    appoint, promote, train and supervise members of the

15   Irvine Police Department who would enforce the laws in

16   effect in California and who would protect the

17   constitutional rights of the people of California;

18   b.    by permitting the policy and custom of using

19   unreasonable force to exist and to be followed by the

20   Irvine Police Department,

21   c.    thereby proximately causing the deprivation of Plaintiff's

22   rights under the fourth, fifth, sixth and eighth

23   amendments to the United States Constitution.

24   128.    Defendants Ron Carr, the Irvine Police Department and

25   DOES 1 - 30 are liable to Mr. Monteilh for damages for the

26   deprivation of his rights in violation of 42 USC § 1983 and 1988 as

27   prayed for below.

28   / / /

### SECOND CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS - 42 USC § 1983
### AGAINST DEFENDANTS CARR AND
### IRVINE POLICE DEPARTMENT AND DOES 1 - 30

129.    Plaintiff incorporates the above stated paragraphs numbered 1 - 121, and each of them, as though set forth in their entirety herein.

130.    Shortly after the above-described incidents, Defendants Irvine Police Department, Detective Carr, the FBI and ASAC Barbara Walls appeared at the Orange County Jail where Mr. Monteilh was incarcerated.

131.    While interviewing suspected terrorists, Defendants Irvine Police Department, Detective Carr, the FBI and ASAC Barbara Walls improperly told the suspected terrorists incarcerated at the Orange County Jail that Mr. Monteilh was an informant.

132.    Once a prisoner is labeled as an informant or "snitch" in jail their life in jail and/or prison suddenly changes and is in immediate danger. In jail and prison a "snitch" is frowned upon and is at the bottom of the hierarchy of prison life and subject to the severest verbal and physical attacks, including murder.

133.    There is no real protection for a snitch in jail or prison, except protective custody, which also presents a different type of "hard time." In protective custody prisoners are confined in units that are separated from the general population and they spend an enormous amount of time (sometimes up to 23 hours a day) confined to a small cell in a separate housing unit. This takes a huge psychological toll on the imprisoned individual because of the existential nature of the punishment. The prisoner becomes fully

1  aware of each moment and is left alone to contemplate his
2  situation, which at times is overwhelming and can lead to suicidal
3  tendencies.

4      134.   After the terrorists and other inmates were told by
5  Defendants that Mr. Monteilh was an informant or "snitch," they
6  published this information by word of mouth to other jails in
7  Orange County, Wasco State Prison and Coalinga Community
8  Correctional Facility.  The Defendants knew or should have known
9  that by telling the terrorists that Mr. Monteilh was an informant,
10 showing his picture and saying that he had previously worked with
11 Defendants, that said information would be published throughout
12 the jails and prisons where Mr. Monteilh would be incarcerated,
13 that his life would be placed in danger and that Mr. Monteilh would
14 suffer great mental and physical harms.

15     135.   Upon information and belief, Defendants further
16 published to other inmates and to the public at large, that Mr.
17 Monteilh was an informant. Defendant published this information
18 knowing it was dangerous and life threatening to Mr. Monteilh, or
19 with reckless disregard as to the effects if the statements.

20     136.   Until Defendants made their statements, there was no
21 information in the jail or prison, rumor or otherwise, to suggest that
22 Plaintiff was an informant. At no time did Plaintiff reveal his status
23 as a confidential informant for the FBI prior to Defendants' above-
24 described acts.

25     137.   As a direct and proximate result of the actions of
26 Defendants, a crisis atmosphere surrounded Plaintiff. Inmates
27 stayed away from Plaintiff and a substantial number of inmates
28 accosted, threatened, attacked and tried to kill Mr. Monteilh.

138.   As a direct and proximate result of the above-described conduct, the Plaintiff was subject to being accosted, threatened, attacked and attempted murder, causing physical injuries, scars, severe embarrassment, humiliation, mental anguish and psychological and emotional distress.

139.   As a further direct and proximate result of the above-described conduct, Plaintiff expressed thoughts of suicide and at times was severely depressed.

140.   As a further direct and proximate result of the above-described conduct, Plaintiff has suffered the deprivation of precious rights, privileges and immunities under the United States Constitution and the Constitution of the State of California, to his great detriment and loss.

141.   The actions of Defendants, in releasing private and confidential information about Mr. Monteilh's status as a confidential informant, was done pursuant to the policy, practice or custom of the Defendants concerning interrogations and investigations, which permitted, condoned and encouraged the release of information which was clearly confidential and private.

142.   As further evidence of said policy, Defendants, along with and at the direction of the City of Irvine Police Chief Maggard have intentionally, willfully or negligently failed to properly train, instruct and discipline Irvine Police Department officers, Detective Carr and other employees, including but not limited to the following:

      a.   failure to properly train and instruct police officers and other employees in the rights of persons, including Plaintiff, and the protection of confidential information;

   b.   failure to adequately investigate allegations of
        improper police and other employees conduct;

   c.   failure to discipline, prosecute or remove police
        officers and other employees who exceed their
        authority and violate the rights of persons,
        including Plaintiff.

143.   The actions of Defendants, acting under color of state and local law, custom and usage, deprived Plaintiff of his rights, privileges, and immunities under the laws and Constitution of the United States and the Constitution of the State of California, and in particular, of his right of privacy.

144.   By these actions, Defendants have jointly and severally deprived Plaintiff of his rights under the first, fourth and fourteenth amendments to the United States Constitution, in violation of 42 U.S.C. §§ 1983 and 1988.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS [*Bivens*]
### AGAINST DEFENDANT BARBARA WALLS, IRVINE POLICE
### DEPARTMENT, RONALD CARR AND DOES 31 - 60

145.   Plaintiff incorporates the above stated paragraphs numbered 1 - 127, 128 - 143, and each of them, as though set forth in their entirety herein.

146.   Plaintiff is further informed, believes and based thereon alleges that Defendants Irvine Police Department and Detective Ronald Carr were concurrently working as members of the Orange County Joint Terrorism Task Force and were federally deputized at all times mentioned herein.

147.   The actions of Defendant Barbara Walls, acting under

color of federal law, and Defendants Irvine Police Department and
Ronald Carr, acting under color of federal and state law,
constituted an invasion of plaintiff's right to be secure in his person
against unreasonable seizures as guaranteed by the Fourth and
Fourteenth Amendments to the United States Constitution, an
invasion of plaintiff's right to be free from deprivation of his liberty
without due process of law as guaranteed by the Fifth and
Fourteenth Amendments to the United States Constitution, a
deprivation of the plaintiff's right to the assistance of counsel as
guaranteed by the Sixth and Fourteenth Amendments to the United
States Constitution, and an invasion of plaintiff's right to privacy as
guaranteed by the Ninth Amendment to the United States
Constitution.

148.   The aforesaid actions of defendants further constituted
an invasion of his privacy and abuse of process, all in violation of
the law of the State of California where the incidents occurred.

149.   Defendants Barbara Walls, Ron Carr, the Irvine Police
Department and DOES 31 - 60 are liable to Mr. Monteilh for
damages for his physical injuries, mental suffering and emotional
distress injuries and the deprivation of his rights as prayed for
below.

## FOURTH CAUSE OF ACTION
### FTCA - 28 USC § 2679, et seq. [NEGLIGENCE]
### AGAINST DEFENDANTS UNITED STATES AND DOES 61 - 100

150.   Plaintiff incorporates all the above stated paragraphs,
1 - 121, as though set forth in their entirety herein.

151.   The Federal Tort Claim Act (FTCA) authorizes recovery
for personal injury, death, or property damage caused by negligent

federal government employees acting within the scope of their federal employment.

152.   The liability of the United States and DOES 61 - 100 is determined by the law of the state of California pursuant to 28 USC § 2679.

153.   The negligence claims of Craig F. Monteilh against the United States and DOES 61 - 100 are allowed pursuant to 28 U.S.C. § 2680.

154.   Plaintiff Craig F. Monteilh seeks the remedy of money damages for the negligent acts and/or omissions of federal government employees as set forth in the above-stated paragraphs.

155.   Plaintiff Craig F. Monteilh presented an administrative tort claim to the FBI, within two years of accrual of the claim, for adjudication before filing this suit in federal court.

156.   In the administrative tort claim presented to the FBI, Plaintiff Craig F. Monteilh demanded $10,000,000, the same amount demanded herein.

157.   Plaintiff Craig F. Monteilh has filed the instant Complaint within six months of the agency's denial of the administrative tort claim.

158.   Defendant United States, the FBI and DOES 61 - 100 were aware Plaintiff Craig F. Monteilh was working as an informant for the FBI.

159.   Based upon the five (5) year agency relationship between the FBI and Plaintiff Craig F. Monteilh, the signed Federal documents describing the agency relationship, the guidelines which the FBI is required to follow concerning its confidential informants, and the representation made by the FBI concerning its duties to

1 | Plaintiff Craig F. Monteilh for his work as an informant, Defendant

2 | United States, the FBI and DOES 61 - 100 had a legal duty to

3 | exercise reasonable care in the handling of Plaintiff Craig F.

4 | Monteilh as an informant.

5 |      160.    Defendant United States, the FBI and DOES 61 - 100, in

6 | breach of their duty of care to Mr. Monteilh, caused his

7 | unconsented rendition from the Orange County Jail to a foreign

8 | location, as set forth above.

9 |      161.    Defendant United States, the FBI and DOES 61 - 100, in

10 | breach of their duty of care to Mr. Monteilh, caused him, under

11 | duress, to submit to a polygraph as described above.

12 |      162.    Defendant United States, the FBI and DOES 61 - 100, in

13 | breach of their duty of care to Mr. Monteilh, caused his status as

14 | an informant to be revealed to terrorists and other inmates at the

15 | Orange County Jail, Wasco State Prison and Coalinga Community

16 | Correctional Facility.

17 |      163.    Until Defendants made their statements, there was no

18 | information in the jail or prison, rumor or otherwise, to suggest that

19 | Plaintiff was an informant. At no time did Plaintiff reveal his status

20 | as a confidential informant for the FBI prior to Defendants' above-

21 | described acts.

22 |      164.    As a direct and proximate result of the actions of

23 | Defendant United States, the FBI and DOES 61 - 100, a crisis

24 | atmosphere surrounded Plaintiff whereby many inmates stayed

25 | away from Plaintiff and a substantial number of inmates accosted,

26 | threatened, attacked and tried to kill Mr. Monteilh.

27 |      165.    As a direct and proximate result of the actions of

28 | Defendant United States, the FBI and DOES 61 - 100, the Plaintiff

1   was subject to being accosted, threatened, attacked and attempted

2   murder, causing physical injuries, scars, severe embarrassment,

3   humiliation, mental anguish and psychological and emotional

4   distress.

5       166.   As a further direct and proximate result of the

6   above-described actions of Defendant United States, the FBI and

7   DOES 61 - 100, Plaintiff expressed thoughts of suicide and at times

8   was severely depressed.

9       167.   The actions of Defendants, in releasing private and

10  confidential information about Mr. Monteilh's status as a

11  confidential informant, was done pursuant to the policy, practice or

12  custom of the Defendants concerning interrogations and

13  investigations, which permitted, condoned and encouraged the

14  release of information which was clearly confidential and private.

15      168.   Defendant United States, the FBI and DOES 61 - 100, in

16  breach of their duty of care to Mr. Monteilh, caused him to be

17  removed from protective custody and suffer further physical

18  injuries, mental suffering and emotional distress injuries.

19      169.   Defendant United States, the FBI and DOES 61 - 100, in

20  breach of their duty of care to Mr. Monteilh caused the foreseeable

21  harm described in the preceding paragraphs, including but not

22  limited being identified in jail and prison as an informant or snitch,

23  being placed in general population in prison, being removed from

24  protective custody and placed back into general population, being

25  attacked and stabbed, and living in fear for his life.

26      170.   The acts and omissions of Defendant United States, the

27  FBI and DOES 61 - 100, in breach of their duty of care to Mr.

28  Monteilh were the proximate and legal cause of damages to Plaintiff

---

SECOND AMENDED COMPLAINT
OF CRAIG MONTEILH

USDC, CENTRAL DISTRICT
CASE NO. SACV10-00102-JVS(RNBx)

Craig F. Monteilh, reason by which Defendants must to compensate all the damages they have caused, including but not limited to damages for physical injuries, mental suffering, emotional distress, lost wages, and economic damages.

171. Defendants FBI and DOES 61 - 100 are liable to Mr. Monteilh for damages in excess of $10,000,000 as prayed for below.

## FIFTH CAUSE OF ACTION
## FTCA - 28 USC § 2679, et seq.
## [NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS]
## AGAINST DEFENDANTS UNITED STATES AND DOES 61 - 100

172. Plaintiff incorporates all the above stated paragraphs, 1 - 121, as though set forth in their entirety herein.

173. The Federal Tort Claim Act (FTCA) authorizes recovery for personal injury, death, or property damage caused by negligent federal government employees acting within the scope of their federal employment.

174. The liability of the United States and DOES 61 - 100 is determined by the law of the state of California pursuant to 28 USC § 2679.

175. The negligence claims of Craig F. Monteilh against the United States and DOES 61 - 100 are allowed pursuant to 28 U.S.C. § 2680.

176. Plaintiff Craig F. Monteilh seeks the remedy of money damages for the negligent acts and/or omissions of federal government employees as set forth in the above-stated paragraphs.

177. Plaintiff Craig F. Monteilh presented an administrative tort claim to the FBI, within two years of accrual of the claim, for adjudication before filing this suit in federal court.

178.    In the administrative tort claim presented to the FBI,
Plaintiff Craig F. Monteilh demanded $10,000,000, the same
amount demanded herein.

179.    Plaintiff Craig F. Monteilh has filed the instant Complaint
within six months of the agency's denial of the administrative tort
claim.

180.    Defendant United States, the FBI and DOES 61 - 100
were aware Plaintiff Craig F. Monteilh was working as an informant
for the FBI.

181.    Based upon the five (5) year agency relationship between
the FBI and Plaintiff Craig F. Monteilh, the signed Federal
documents describing the agency relationship, the guidelines which
the FBI is required to follow concerning its confidential informants,
and the representation made by the FBI concerning its duties to
Plaintiff Craig F. Monteilh for his work as an informant, Defendant
United States, the FBI and DOES 61 - 100 had a legal duty to
exercise reasonable care in the handling of Plaintiff Craig F.
Monteilh as an informant.

182.    Defendant United States, the FBI and DOES 61 - 100, in
breach of their duty of care to Mr. Monteilh, caused him under
duress to engage in illegal activities including but not limited to
racial profiling, religious profiling, instigating extremist rhetoric to
entrap Muslims, blackmailing Muslims to become informants,  Mr.
Monteilh being armed to attend mosques, Mr. Monteilh being told
to engage in sexual relations with Muslim women despite being
married, and the misuse of surveillance devices in the Islamic
community and warrantless wiretapping. This continued
mishandling of Mr. Monteilh as a confidential informant caused

and exacerbated the emotional distress and mental suffering of Mr.
Monteilh.

183.    Defendant United States, the FBI and DOES 61 - 100, in
breach of their duty of care to Mr. Monteilh, caused him under
duress to keep his audio and visual recording equipment on at all
times, including the time he spent with Muslim women on dates,
discussing their private and personal thoughts, and while engaged
in various sexual acts and states of coitus.  Mr. Monteilh suffered
emotional distress and mental anguish because he was informed
that the audio was listened to and the videos watched by many FBI
agents and analysts on a daily basis, who had thoughts and
comments about the sexual prowess of Mr. Monteilh and the
Muslim women.  Again, Mr. Monteilh followed the orders under
duress, and these actions, orders and tasks caused him severe
emotional distress and mental anguish which continues to this day.

Defendant United States, the FBI and DOES 61 - 100, in
breach of their duty of care to Mr. Monteilh, caused his
unconsented rendition from the Orange County Jail to a foreign
location, as set forth above.

184.    Defendant United States, the FBI and DOES 61 - 100, in
breach of their duty of care to Mr. Monteilh, caused him, under
duress, to submit to a polygraph as described above.

185.    Defendant United States, the FBI and DOES 61 - 100, in
breach of their duty of care to Mr. Monteilh, caused his status as
an informant to be revealed to terrorists and other inmates at the
Orange County Jail, Wasco State Prison and Coalinga Community
Correctional Facility.

186.    Until Defendants made their statements, there was no

1  information in the jail or prison, rumor or otherwise, to suggest that

2  Plaintiff was an informant. At no time did Plaintiff reveal his status

3  as a confidential informant for the FBI prior to Defendants' above-

4  described acts.

5  187.   As a direct and proximate result of the actions of

6  Defendant United States, the FBI and DOES 61 - 100, a crisis

7  atmosphere surrounded Plaintiff whereby many inmates stayed

8  away from Plaintiff and a substantial number of inmates accosted,

9  threatened, attacked and tried to kill Mr. Monteilh.

10  188.   As a direct and proximate result of the actions of

11  Defendant United States, the FBI and DOES 61 - 100, the Plaintiff

12  was subject to being accosted, threatened, attacked and attempted

13  murder, causing physical injuries, scars, severe embarrassment,

14  humiliation, mental anguish and psychological and emotional

15  distress.

16  189.   As a further direct and proximate result of the

17  above-described actions of Defendant United States, the FBI and

18  DOES 61 - 100, Plaintiff expressed thoughts of suicide and at times

19  was severely depressed.

20  190.   The actions of Defendants, in releasing private and

21  confidential information about Mr. Monteilh's status as a

22  confidential informant, was done pursuant to the policy, practice or

23  custom of the Defendants concerning interrogations and

24  investigations, which permitted, condoned and encouraged the

25  release of information which was clearly confidential and private.

26  191.   Defendant United States, the FBI and DOES 61 - 100, in

27  breach of their duty of care to Mr. Monteilh, caused him to be

28  removed from protective custody and suffer further physical

1  injuries, mental suffering and emotional distress injuries.

2      192.    Defendant United States, the FBI and DOES 61 - 100, in
3  breach of their duty of care to Mr. Monteilh caused the foreseeable
4  harm described in the preceding paragraphs, including but not
5  limited being identified in jail and prison as an informant or snitch,
6  being placed in general population in prison, being removed from
7  protective custody and placed back into general population, being
8  attacked and stabbed, and living in fear for his life.

9      193.    The acts and omissions of Defendant United States, the
10  FBI and DOES 61 - 100, in breach of their duty of care to Mr.
11  Monteilh were the proximate and legal cause of damages to Plaintiff
12  Craig F. Monteilh, reason by which Defendants must to compensate
13  all the damages they have caused, including but not limited to
14  damages for physical injuries, mental suffering, emotional distress,
15  lost wages, and economic damages.

16      194.    Defendants FBI and DOES 61 - 100 are liable to Mr.
17  Monteilh for damages in excess of $10,000,000 as prayed for below

18                            **PRAYER**

19      WHEREFORE, Plaintiff Craig F. Monteilh prays for judgment
20  against Defendants, and each of them, as follows:

21  FIRST CAUSE OF ACTION:

22  1.  For general damages in a sum according to proof at trial in
23      excess of $75,000;

24  2.  For special damages in a sum according to proof at trial in
25      excess of $75,000;

26  3.  For economic damages in a sum according to proof at trial in
27      excess of $75,000;

28  4.  For consequential damages in a sum according to proof at trial

1   in excess of $75,000;

2   5.  For attorneys' fees per statute;

3   6.  For such other relief as the Court deems just and proper.

4   SECOND CAUSE OF ACTION:

5   7.  For general damages in a sum according to proof at trial in
6       excess of $75,000;

7   8.  For statutory damages in a sum according to proof at trial in
8       excess of $75,000;

9   9.  For economic damages in a sum according to proof at trial in
10      excess of $75,000;

11  10. For consequential damages in a sum according to proof at trial
12      in excess of $75,000;

13  11. For attorneys' fees per statute;

14  12. For such other relief as the Court deems just and proper.

15  THIRD CAUSE OF ACTION:

16  13. For general damages in a sum according to proof at trial in
17      excess of $75,000;

18  14. For statutory damages in a sum according to proof at trial in
19      excess of $75,000;

20  15. For economic damages in a sum according to proof at trial in
21      excess of $75,000;

22  16. For consequential damages in a sum according to proof at trial
23      in excess of $75,000;

24  17. For attorneys' fees per statute;

25  **FOURTH CAUSE OF ACTION**

26  18. For such other relief as the Court deems just and proper.

27  19. For general damages in excess of $10,000,000, according to
28      proof.

20. For economic damages in a sum according to proof at trial;

21. For consequential damages in a sum according to proof at trial;

22. For attorneys' fees per statute;

23. For such other relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**

24. For such other relief as the Court deems just and proper.

25. For general damages in excess of $10,000,000, according to proof.

26. For economic damages in a sum according to proof at trial;

27. For consequential damages in a sum according to proof at trial;

28. For attorneys' fees per statute;

**ON ALL CAUSES OF ACTION**

29. Costs of suit;

30. Pre and/or post judgment interest at the maximum legal rate;

31. For such other relief as the Court deems just and proper.

WOODS & KROLIKOWSKI

Dated: September 2, 2010

Adam J. Krolikowski, Esq.
For Plaintiff Craig F. Monteilh

**EXHIBIT A**

To:    Special Agent Paul Allen

From:  "Oracle" (Farouk Aziz)

Date:  March 14, 2007

RE:    Monthly Expenditures (plus 20%)

Agent Allen,

Since the last monthly expenditure report itemized a few months ago my expenses have
increased.  There are documents I omitted due to my inexperience and expedience to
submit receipts to you.  Sir, the 20% increase I'm asking is for expenses for my family
(wife; children, ages 15, 16, 19).  The monthly compensation I now receive and the
enclosed (revised) does not cover expenses for my family.

This letter is not a demand, but a request, that the operation continue to be effective and
in the interest of The United States.  At the risk of the perception of arrogance I think you
(the Bureau) and I are working well together to achieve the safeguarding of this great
country.

In closing, I sincerely thank you for your efforts in regards to my impending early
discharge from probation.  I thank you also for your example of integrity throughout this
operation as well as the wise and careful direction you're providing.  It is my earnest hope
that we continue to work together to bring to justice the enemies of this nation both
foreign and domestic.

Cordially,

"Oracle" (Farouk Aziz)

**EXHIBIT B**

INTRODUCING THE NEW 2011 FIESTA
FIESTA TAKES ON VERSA
WATCH THE BEATDOWN IN THE STREETS
▶ Watch Video                                         Advertisement

**Los Angeles Times**    ARTICLE COLLECTIONS

YOU ARE HERE:  LAT Home → Collections → Immigrants

Ads by Google



Thinking about buying an Electric Vehicle?

EDISON

Learn more >>

## Brother-in-law of Al Qaeda operative granted bail

*The Afghan-born O.C. resident was arrested for allegedly omitting facts in his citizenship application. His sister's husband is said to be Osama bin Laden's security coordinator.*

February 25, 2009 | Christine Hanley

Over the strong objections of the government, a federal judge in Orange County agreed to grant bail Tuesday for the brother-in-law of Osama bin Laden's alleged security coordinator in a case that is stirring debate about the FBI's use of informants.

Ahmadullah Sais Niazi, a Tustin man of Afghan origin who earned his U.S. citizenship five years ago, would be electronically monitored and confined to his home if his family can guarantee $500,000 bail. If released, he would also be restricted from traveling outside Southern California and must surrender his passport and other travel documents.

Ads by Google                                        Advertisement



JP Morgan Chase

wants to lay off hardworking janitors who keep Century Plaza clean

United Service Workers West SEIU

Stand with them against Wall Street greed!

Go Back To School
Grant Funding May Be Available To Those Who Qualify

SEP 2010 - You may qualify for a financial aid package which can help you

return to school. Grants and scholarships can also help you pay for your degree.

See Degrees Now >>

Select Your Age
33

chaseUSA

U.S. Magistrate Arthur Nakazato said he considered not granting bail and that he was troubled by an FBI agent's testimony that Niazi considered Bin Laden "an angel," planned to blow up buildings and showed sympathy to at least one terrorist organization.

Yet, the judge said a person cannot choose his relatives and that Niazi had not tried to flee despite knowing he had been under investigation for at least a year.

Niazi, arrested at his suburban home last week, is scheduled to be arraigned next month on suspicion of perjury, naturalization fraud, misuse of a passport obtained by fraud and making a false statement to a federal agency. He is accused of lying during his citizenship process about using aliases and failing to disclose that his brother-in-law is allegedly a security coordinator for Bin Laden and that he took a trip to Pakistan to see his brother-in-law.

In court Tuesday, FBI Special Agent Thomas J. Ropel III acknowledged that Niazi and others at his mosque did come forward to turn in a convert who "was scary to them" because he repeatedly talked about jihad and other terrorist activities. But Ropel revealed that the convert was an informant and that the FBI believed Niazi may have realized this and filed the report to protect himself.

During conversations with the informant — some of which were secretly recorded — Niazi initiated discussions about jihad, obtaining weapons, blowing up buildings and sending money overseas to the Afghan mujahedin, according to Ropel. Niazi also taught the informant Arabic and was preparing to send the informant to terrorist training camps in Yemen or Pakistan, Ropel said.

Shakeel Syed, executive director of the Islamic Shura Council of Southern California, said he was not surprised to learn the convert was an informant, "but glad to hear it in a court of law."

Ads by Google



Thinking about buying an Electric Vehicle?    EDISON    Learn more >>

1 | 2 | Next

FIND MORE STORIES ABOUT

• Immigrants
• Orange County
• Terrorism
• Citizenship
• Orange_county

FEATURED ARTICLES

California Briefing / Santa Ana
March 3, 2009

Suit by alleged informant says FBI endangered his life
January 23, 2010

FBI monitored members of O.C. mosques at gyms, alleged...
April 28, 2009

**EXHIBIT C**

# Award Certificate

*presented to*



## Farouk Aziz

*for successfully completing the course in Arabic Language Program held at:*

**ICOI**
**Islamic Center of Irvine**
**2 Truman**
**Irvine Ca 92620**
**(949) 786-4264**

*This award is for the achievement of completing the Arabic course that deals with reading, writing, grammar and vocabulary. This certificate is a representation of all your success in completing the course.*

Signature

Date  3/30/2007

**EXHIBIT D**

Purity    of    Unity → "Sifaa Al  Niah"

"Fitnah"  rules  of  stopping  conflict

    Surah   2      ✓ 191 + 192
    Surah   8      ✓ 39

    Rules   of   Engagement

    Surah   5         ✓ 33
                  ✓ 34
                  ✓ 55

- Hadith
- Fiqh

**EXHIBIT E**

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF LOS ANGELES - WEST COVINA BRANCH

10   DEPARTMENT 8                      HON. ABRAHAM KHAN, JUDGE

11

12   THE PEOPLE OF THE STATE OF CALIFORNIA,    )
                                               )
13                          PLAINTIFF,         )
                                               )
14              VS.                            )  NO. KA059040
                                               )  PROBATION TERMINATION
15   CRAIG F. MONTEILH,                        )
                                               )
16                          DEFENDANT.         )
     _____)

17

18               WEST COVINA, CALIFORNIA; AUGUST 20, 2008

19                            2:40 P.M.

20          UPON THE ABOVE DATE, THE DEFENDANT NOT

21       BEING PRESENT IN COURT AND NOT REPRESENTED BY

22       COUNSEL; THE PEOPLE BEING REPRESENTED BY LINDA

23       CHILSTROM, DEPUTY DISTRICT ATTORNEY OF

24       LOS ANGELES COUNTY, THE FOLLOWING PROCEEDINGS

25       WERE HELD:

26          (DIANA WHITESEL, CSR #6287, OFFICIAL REPORTER.)

27

28

                               1                    CERTIFIED COPY

```
1   CASE NUMBER:                    KA059040

2   CASE NAME:                      PEOPLE OF THE STATE OF CALIFORNIA

3                                   VS. CRAIG MONTEILH

4   WEST COVINA, CALIFORNIA         AUGUST 20, 2007

5   DEPARTMENT NO. 8                HON. ABRAHAM KHAN, JUDGE

6   REPORTER:                       DIANA WHITESEL, CSR NO. 6287

7   TIME:                           2:40 P.M.

8   APPEARANCES:

9                   (LINDA CHILSTROM, DEPUTY DISTRICT ATTORNEY

10                     OF LOS ANGELES COUNTY.)

11                          -oOo-

12

13       THE CLERK:  PEOPLE ARE GOING TO MOVE TO MAKE A MOTION TO

14   TERMINATE PROBATION.

15       THE COURT:  CRAIG F. MONTEILH.  KA059040.

16     MS. CHILSTROM:  YOUR HONOR, I HAVE BEEN INFORMED BY

17   MR. SATO OF MY OFFICE THAT HEAD DEPUTY SCOTT CARBAUGH HAS

18   REQUESTED THAT THIS CASE -- THAT THE PROBATION IN THIS MATTER BE

19   TERMINATED.

20       THE COURT:  CAN YOU GIVE ME A REASON?

21     MS. CHILSTROM:  I DON'T KNOW A REASON.  I WAS JUST TOLD IT

22   WAS UPON THE REQUEST OF THE HEAD DEPUTY.

23       THE COURT:  I'M GOING TO CONTINUE THIS UNTIL TOMORROW

24   UNTIL YOU CAN GIVE ME A REASON.  I USUALLY DON'T TERMINATE

25   PROBATION UNLESS THERE IS SOMETHING I CAN RELY ON.

26     MS. CHILSTROM:  NOT A PROBLEM.

27            I TAKE IT, WE'RE WAITING FOR MR. LINDARS.

28            MAY I MAKE A QUICK CALL?
```

1                    (PAUSE IN PROCEEDINGS.)

2

3        MS. CHILSTROM:  YOUR HONOR, COULD THE COURT RECALL THE

4   LAST CASE?

5        THE COURT:  OKAY.  WE'RE STILL ON THE RECORD IN CRAIG F.

6   MONTEILH.

7        MS. CHILSTROM:  YOUR HONOR, I JUST SPOKE WITH MR. SATO.

8   INITIALLY I WAS JUST TOLD THAT THE HEAD DEPUTY WANTED THE

9   PROBATION TERMINATED.

10        APPARENTLY THE DEFENDANT IS WORKING WITH F.B.I. AGENT

11   KEVIN ARMSTRONG.  HE HAS GIVEN AGENT ARMSTRONG VERY, VERY

12   VALUABLE INFORMATION THAT HAS PROVEN TO BE ESSENTIAL IN AN F.B.I.

13   PROSECUTION.  IT WAS AGENT ARMSTRONG THAT CONTACTED THE HEAD

14   DEPUTY AND THE HEAD DEPUTY INSTRUCTED US TO ASK FOR TERMINATION.

15        THE COURT:  WELL, OKAY.  I KNOW THE DEFENDANT HIMSELF WAS

16   HERE IN APRIL AND HAD REQUESTED EARLY TERMINATION.  AND I BELIEVE

17   ON RECOMMENDATION OF THE DISTRICT ATTORNEY, I DENIED HIS REQUEST.

18   AND THAT WAS BACK IN APRIL.  THAT'S WHY I WANTED TO FIND OUT WHAT

19   THE REASONS WHY WERE AT THIS TIME BECAUSE IT'S ONLY BEEN FOUR

20   MONTHS AFTER.

21        BUT OTHERWISE HE'S PAID HIS FINANCIAL OBLIGATION AND

22   HE'S OTHERWISE BEEN ON PROBATION -- HOW LONG HAS HE BEEN ON?

23   IT'S KA059040.  IS THAT '03?

24        MS. CHILSTROM:  IT IS '03, YOUR HONOR.

25        THE CLERK:  YES, YOUR HONOR, SINCE MAY 5, '03.

26        THE COURT:  ALL RIGHT.  APPARENTLY HE'S HAD PROBATION

27   EXTENDED.  IT MAY HAVE BEEN BECAUSE OF A WARRANT THAT HAD BEEN

28   ISSUED WHICH IT WOULD OTHERWISE TOLL THE RUNNING OF HIS PERIOD.

                                  3

1          I'LL GRANT THE REQUEST FOR THE REASONS STATED.

2          MS. CHILSTROM:   THANK YOU.

3

4               (THE PROCEEDINGS IN THE ABOVE-ENTITLED

5          MATTER WERE ADJOURNED.)

6

7                         -oOo-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - WEST COVINA BRANCH

DEPARTMENT 8                    HON. ABRAHAM KHAN, JUDGE

THE PEOPLE OF THE STATE OF CALIFORNIA,        )
                                              )
                    PLAINTIFF,                )
                                              )
          VS.                                 )  NO. KA059040
                                              )
CRAIG F. MONTEILH,                            )  REPORTER'S
                                              )  CERTIFICATE
                    DEFENDANT.                )
_____)

          I, DIANA WHITESEL, CSR NO. 6287, OFFICIAL REPORTER OF THE

SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF

LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND

CORRECT TRANSCRIPT OF ALL OF THE ADMONITIONS TAKEN AT THE TIME OF

THE TAKING OF THE PLEA AND PRONOUNCEMENT OF SENTENCE IN THE

ABOVE-ENTITLED CAUSE; AND FURTHER THAT THE VIEWS AND

RECOMMENDATIONS OF THE COURT, IF ANY, ARE CONTAINED THEREIN

PURSUANT TO SECTION 1203.01 OF THE PENAL CODE THE ABOVE-ENTITLED

MATTER.

          DATED THE DECEMBER 2, 2009

_____, CSR NO. 6287
DIANA WHITESEL, OFFICIAL REPORTER

**EXHIBIT F**

**YAHOO! MAIL**
Classic

Print - Close Window

| | |
|---|---|
| **Date:** | Sat, 22 Sep 2007 14:27:32 -0700 |
| **From:** | "Farouk al-Aziz" <cfmonteilh@cox.net> |
| **To:** | ████████ |
| **Subject:** | Fwd: Re: Request for Interview |

Date: Sat, 22 Sep 2007 14:23:51 -0700
From: Farouk al-Aziz <cfmonteilh@cox.net>
To: ████████████████████
Subject: Re: Request for Interview

Mr. ████
I am responding to your message requesting an interview. I regret that it has taken some
time to contact you. I would like to speak to you in regards to potential terrorist activity
at The Islamic Center of Irvine and various mosques throughout the area. This potential
terrorist activity focuses of the recruitment and indoctorinization of young and new
muslims. I have proof of these allegations. If you are not interested I will find a white
journalist who is not influenced by CAIR.
Cordially,
Farouk al-Aziz

---- "████  wrote:
Craig,
I wish you would consider talking to me. There might be a story here or there might not
be. Apparently, your rhetoric has attracted attention in the Muslim community and
caused some to wonder about your motives and if you're working for the FBI. I don't
have to tell you that there is a level of paranoia among Muslims these days about FBI
surveillance of their community, particularly at the Irvine mosque.

Last year, I covered a meeting at the mosque where Muslims met with the head of the
FBI's Los Angeles office. These concerns about FBI surveillance of the mosque in
particular and the community in general were discussed at this meeting. I think this
explains why questions are being raised about you. I'm told that these questions arose
after some mosque members heard you comment about Islam in the world today.
Perhaps there is no reason for the community to be concerned. Perhaps it's just their
paranoia. But I can't get to the bottom of this unless I speak with you and hear your side
of the story. All of this could very well be a misunderstanding.

IRV 00049

AT&T Yahoo! Mail - ██████████          Page 2 of 2

*De#07-14569*

So, please give me a call. I'm not assuming that anything is true unless I can confirm it
with facts. And you can help me in this endeavor by talking to me.

██

████████

Los Angeles Times

███████████

RV 00050

**EXHIBIT G**

FD-448 (Rev. 6-2-97)



# FBI FACSIMILE

# COVER SHEET

| PRECEDENCE | CLASSIFICATION | |
|---|---|---|
| ☒ Immediate | ☐ Top Secret | Time Transmitted: __6:20pm EST__ |
| ☐ Priority | ☐ Secret | Sender's Initials: __HRF__ |
| ☐ Routine | ☐ Confidential | Number of Pages: __4__ |
| | ☐ Sensitive | (including cover sheet) |
| | ☒ Unclassified | |

To: __Woods and Krolikowski__                             Date: __7/20/2010__
      Name of Office

Facsimile Number: __(949) 269-1868__

    Attn: __Adam J. Krolikowski, Esq.__
        Name           Room     Telephone

From: __Henry R. Felix, Associate General Counsel__
              Name of Office

Subject: __Craig Monteilh [Confidential Communication]__

      __Compliance with NDA Notice Requirement__

Special Handling Instructions: _____

Originator's Name: __Henry R. Felix__           Telephone: __202-220-9328__

Originator's Facsimile Number: __202-220-9341__

Approved: _____

Brief Description of Communication Faxed: __Letter in Response to July 16, 2010 Letter__

    __from Adam J. Krolikowski__

## WARNING

Information attached to the cover sheet is U.S. Government Property. If you are not the intended recipient of this information, disclosure, reproduction, distribution, or use of this information is prohibited (18.USC. § 641). Please notify the originator or the local FBI Office immediately to arrange for proper disposition.



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D. C. 20535-0001

July 20, 2010

Adam J. Krolikowski, Esq.                     *Via Facsimile to 949-269-1868*
Woods & Krolikowski
1200 Main Street, Suite H
Irvine, CA 92614

  RE: <u>Craig Monteilh [Confidential Communication]</u>
     <u>Compliance with NDA Notice Requirement</u>

Dear Mr. Krolikowski:

    This office is in receipt of your letter to Steven Kramer dated July 16, 2010.  In
the future, please address all correspondence regarding this matter to my attention at the address
listed below.

    First, you state in this letter "that after multiple disclosures over the course of
more than a year, not a single response has been received."  On June 16, 2010, I sent a letter to
you in response to your letter dated June 15, 2010.  I have enclosed a copy of this letter, in the
event that you did not receive it.

    Second, in your July 16th letter you state that Mr. Montielh has "been asked by
co-counsel, Peter Bibring, Esq. of the ACLU of Southern California, to obtain copies of audio
and video recordings made of Detective Ronald Carr at the direction of Special Agent Paul Allen
during the time frame of Operation Flex, on or about March 7, 2007."  In advance of the
disclosure of these purported recordings to any individual, please provide us with any
information concerning these recordings that is/or may be covered by the Non-Disclosure
Agreement.  The FBI maintains that all the obligations created under the Non-Disclosure

Agreement remain in effect. Notification by Mr. Monteilh that he intends to disclose information covered by this agreement does not limit or nullify the obligations that he accepted by signing this agreement.

Sincerely,

Henry R. Felix
Associate General Counsel
Civil Litigation Unit II
Office of the General Counsel
Federal Bureau of Investigation
PA 400
935 Pennsylvania Ave., NW
Washington, D.C. 20535
Phone: 202-220-9328
Fax:    202-220-9341



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

June 16, 2010

Adam J. Krolikowski, Esq.
Woods & Krolikowski
1200 Main Street, Suite H
Irvine, CA 92614

RE:   <u>Craig Monteilh [Confidential Communication]</u>
<u>Compliance with NDA Notice Requirement</u>

Dear Mr. Krolikowski:

This office is in receipt of your letter to Steven Kramer dated June 15, 2010. In your letter you state that Mr. Montielh has "been asked to review and sign declarations prepared by the ACLU for a lawsuit they will be filing concerning civil rights violations by the FBI within the Islamic Community during the time period of Operation Flex." I am aware that you have sent previous letters to the FBI concerning the Non-Disclosure Agreement that Mr. Monteilh signed on October 5, 2007; however, this is the first letter in which you reference a particular FBI operation or investigation. In advance of June 17, 2010, please provide us with any information that you intend to include in these declarations that is/or may be covered by the Non-Disclosure Agreement. The FBI maintains that all the obligations created under the Non-Disclosure Agreement remain in effect. Notification by Mr. Monteilh that he intends to disclose information covered by this agreement does not limit or nullify the obligations that he accepted by signing this agreement.

Sincerely,

Henry R. Felix
Associate General Counsel
Civil Litigation Unit II
Office of the General Counsel
Federal Bureau of Investigation
PA 400
935 Pennsylvania Ave., NW
Washington, D.C. 20535
Phone: 202-220-9328
Fax:    202-220-9355

TOTAL P.004

**EXHIBIT H**



**EXHIBIT I**

RECEIVED

DEC 0 3 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
HARBOR JUSTICE CENTER-NB

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>vs<br><br>CRAIG FREDERICK MONTEILH   DOB: 07/25/62<br><br>Defendant | CASE NO. IPD DR#07-01931<br>OCDA 07F10440<br><br>ORDER REQUIRING PENAL CODE SECTION 1275.1 HEARING AND NOTIFICATION OF THE DISTRICT ATTORNEY<br><br>Booking No. |

I, Det. Ron Carr, declares:

1.    I am a Peace Officer in the State of California.

2.    Declarant is requesting a warrant for two counts of PC 487(a) and one count of PC 664/487(a) for the above-named defendant.

3. The bail amount of $157,000, set forth in the schedule of bail is insufficient to assure defendant's appearance, in that I believe the source of any consideration or indemnification would be feloniously obtained for the reasons below and request a Penal Code section 1275.1 (b) and (c) hold on the release of the defendant from custody be ordered and any hearing pursuant to 1275.1 (c) and (f) at which the deputy district attorney assigned to this matter be present.

4.    The facts and circumstances in support of this motion are: defendant is without obvious means of employment; defendant obtained all monies

feloniously from the victims by trick or device; defendant victimized two victims and attempted to victimize another; defendant has a previous record of grand theft; defendant has no property in his name and resides in a rental property.

5. I recommend a Penal Code section 1275 Order and bail in the amount of $250,000.00.

6. I respectfully request a hold on the release of the defendant from custody be ordered pursuant to Penal Code section 1275.1 (b).

7. I respectfully request that the assigned deputy district attorney to this matter, Yvette Patko be present at any hearing pursuant to Penal Code section 1275.1 (c) and (f).

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed at
        on 12-3-2007 _____ .



_____          IRVING P.D.
Declarant                    Agency

Phone Number
        949- 724- 7135
        949- 795 -2678

**EXHIBIT J**

**REQUEST FOR NOTIFICATION OF RELEASE OF INMATE**

INMATE NAME: MONTIELA, CRAIG          INMATE BKG: 2425146

REQUESTED BY: AGENT          AGENCY: F.B.I
                 TRACY HANLON

WORK PHONE:          PAGER/CELL:
        (714) 542-8825

**EXHIBIT K**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B (647)

NAME and NUMBER:   INMATE MONTEILH G-17056

On Monday, April 28, 2008, INMATE MONTEILH advised custody staff that he was in fear for his personal safety if he remained on Facility C or H. INMATE MONTEILH stated that he testified in a federal case in Orange County. This information was verified by the Federal Bureau of Investigation. On Sunday, April 27, 2008, INMATE MONTEILH was involved in a mutual combat. INMATE MONTEILH stated he was assaulted due to being discovered as being an FBI informant. INMATE MONTEILH requested to be placed on Facility B's (Soft Yard). Per INMATE MONTEILH'S request he will be housed on Facility B pending his transfer to a suitable institution. Although, not considered genuine SNY per the Departmental guidelines, INMATE MONTEILH was advised that Facility B does have a notably lower level inmate politics and that inmates have had a higher level of success safely housing and programming. INMATE MONTEILH was given clear program expectations with regards to his behavior while housed on Facility B and that he could be housed with anyone with similar safety needs regardless of their commitment offense while in this facility. INMATE MONTEILH has agreed to abide by those expectations. INMATE MONTEILH was also informed that any discovery of gang activity or unacceptable/disruptive behavior on his part would be cause for review of his housing status. INMATE MONTEILH acknowledged understanding those expectations by affixing his signature to this 128B Chrono.

MONTEILH G-17056

_Cory Monteilh G-17056_

Original:     Central File
        cc:     Counselor
                Facility B, Captain
                Inmate Interview Sheet
                Inmate

DATE:     April 28, 2008          Rec-4 4/11/08

'REQUESTING SNY'        .

_J. ACEVES_
J. ACEVES
CORRECTIONAL SERGEANT
WASCO STATE PRISON-RC

INFORMATIVE CHRONO

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                        CDC 128-B (8-87)

NAME and NUMBER:   INMATE MONTEILH G-17056

On Monday, April 28, 2008, **INMATE MONTEILH** advised custody staff that he was in fear for his personal safety if he remained on Facility C or H.  **INMATE MONTEILH** stated that he testified in a federal case in Orange County.  This information was verified by the Federal Bureau of Investigation.  On Sunday, April 27, 2008, **INMATE MONTEILH** was involved in a mutual combat. **INMATE MONTEILH** stated he was assaulted due to being discovered as being an FBI informant.  **INMATE MONTEILH** requested to be placed on Facility B's (Soft Yard).  Per **INMATE MONTEILH'S** request he will be housed on Facility B pending his transfer to a suitable institution. Although, not considered genuine SNY per the Departmental guidelines, **INMATE MONTEILH** was advised that Facility B does have a notably lower level inmate politics and that inmates have had a higher level of success safely housing and programming.  **INMATE MONTEILH** was given clear program expectations with regards to his behavior while housed on Facility B and that he could be housed with anyone with similar safety needs regardless of their commitment offense while in this facility.  **INMATE MONTEILH** has agreed to abide by those expectations. **INMATE MONTEILH** was also informed that any discovery of gang activity or unacceptable/disruptive behavior on his part would be cause for review of his housing status. **INMATE MONTEILH** acknowledged understanding those expectations by affixing his signature to this 128B Chrono.

MONTEILH G-17056

Original:   Central File
      cc:   Counselor
            Facility B, Captain
            Inmate Interview Sheet
            Inmate

                                                        J. ACEVES
                                                        CORRECTIONAL SERGEANT
                                                        WASCO STATE PRISON-RC

DATE:   April 28, 2008              'REQUESTING SNY'            INFORMATIVE CHRONO

**EXHIBIT L**

STATE OF CALIFORNIA  DEPARTMENT OF CORRECTIONS

**ACTIVITY REPORT**

CDC 1502 (7/2004)

CHECK BOX

REPORT ☐ DISCHARGE REVIEW - NON-__ __ON ☐ ATTACH BPT 1130, C&P REPORT, LEGAL STATUS SHEET

☐ SUPPLEMENTAL TO _____

☐ DISCHARGE REVIEW - NON-__ __ON
☐ NAEA REPORT - SUSPEND/REINSTATE
☐ CSTCU
☒ ACTIVITY REPORT

| CDC NUMBER | NAME (LAST, FIRST, MD) | REGION/UNIT |
|---|---|---|
| G   056 | Monteilh, Craig F. | IV/Fullerton |

| CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|
| 9/15/2011 | 9/15/2009 | ☐ |

| COMMITMENT OFFENSE | IS COMMITMENT OFFENSE SUBJECT TO 667.5 P.C. (WHETHER OR NOT COMMITMENT WAS ENHANCED)? |
|---|---|
| P487(A) Grand Theft exceed $400.00 | ☒ NO   ☐ YES - IF YES, *DO NOT SPECIFY DISCHARGE EFFECTIVE DATE BELOW |

**IF ARRESTED, COMPLETE THE FOLLOWING ARREST DATA**

| ARREST DATE | ARRESTING AGENCY | BOOKING NUMBER AND/OR LOCATION | NAME BOOKED AS |
|---|---|---|---|
| | | | Same |

| HOLD DATE | HOLD REMOVED DATE |
|---|---|
| | |

CIRCUMSTANCES OR CHARGES

On 10/28/08, the subject called stating he was told by his former Agent his case was being transferred to the Fullerton Unit, the subject did not leave a forwarding phone number, thus AOR could not call him back.

On 10/29/08, the subject phones AOR introducing himself. When asked where he is living, the subject stated he is in an Extended Stay Hotel in the City of Lake Forest. He further stated that he moved there to be closer to his current job. When asked who is his employer, he said "FBI". The subject gave me a phone number and name of Agent J. Avalon of the Santa Ana office. I did call and confirm that the subject is indeed an active confidential informant for the FBI. It should also be noted that the subject stayed two weeks at the Extended Stay Hotel in the City of Yorba Linda.

There is nothing in the subject's file to indicate that the subject has met the proper protocol for becoming a confidential informant, therefore, the case is not accepted for supervision at the Fullerton Unit and shall be transferred back to the Costa Mesa Unit.

AE  AGENT'S RECOMMENDATION:

Transfer case back to Costa Mesa Unit.

| PAROLE AGENT'S SIGNATURE | DATE |
|---|---|
| [signature] | 10/29/08 |

UNIT SUPERVISOR'S ACTION

☒ DECISION   ☐ REVIEW   ☐ RETAIN HOLD   RELEASE HOLD AS OF (DATE): _____   ☐ CANCEL WARRANTS — WANTS

☐ CONTINUE ON PAROLE   ☐ CONTINUE IN OUT PATIENT STATUS   *DISCHARGE EFFECTIVE (DATE): _____   ☐ RETAIN ON PAROLE

☐ REINSTATE ON PAROLE AS OF (DATE):   ☐ TIME LOSS  ☐ NO TIME LOSS   ☐ SUSPEND/REINSTATE IN OPS AS OF (DATE):   ☐ REFER TO BPT/NAEA   ☐ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE):

SPECIAL CONDITION(S):   ☐ ADD   ☐ DELETE

UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION

[handwritten]

☐ REFER TO PAROLE ADMINISTRATOR

| UNIT SUPERVISOR'S SIGNATURE | DATE |
|---|---|
| [signature] | OCT 2 9 2008 |

CD ADMINISTRATOR'S COMMENTS/DECISION

| __ER TO BPT/NAEA | *DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ | ☐ | | |

OLEE/RELEASEE COPY PROVIDED (E:)   ☐ MAILED   ........   ☐ DELIVERED BY:

**EXHIBIT M**

**From:** Ivan Chernenko (chernenkoivan@yahoo.com)
**To:** masood.azaran@usdoj.gov
**Date:** Thursday, November 20, 2008 2:31:14 PM
**Subject:** Fw: Civil Right Abuse


----- Forwarded Message ----
**From:** Ivan Chernenko <chernenkoivan@yahoo.com>
**To:** inspector.general@usdoj.gov
**Sent:** Tuesday, November 11, 2008 11:15:25 AM
**Subject:** Civil Right Abuse

To whom it may concern,

I am a confidential source for the F.B.I. Joint Terrorism Task Force (JTTF) in the Los Angeles Region.
I provided good cooberated (recorded) intelligence that resulted in present on-going operations within
the United States and abroad, the obtaining of FISA warrants, sealed indictments, and actions taken by
the DOJ that I do not know or need to know.  The operation I was involved in has executive finding.  I
have signed a non-disclosure agreement as to my role in the operation as well as my relationship to the
Bureau.

During the operation a matter arose stemming from my prior work in the criminal division.  Local law
enforcement detectives came to interview me at my home.  Due to the sensitive nature of the operation I
was instructed by my handler to mislead the detectives.  I followed the direction.  ASAC Barbara Walls
held off all action.  And when my work was finished on the operation Ms. Walls allowed detectives to
arrest me.  I believe ASAC Walls allowed this as a personal act of revenge.

I was further instructed not to divulge any information as to my relationship with the F.B.I. even if it
would have had all charges dropped against me.  As a result I was forced to take a plea and was
sentenced to 16 months state prison.  Please carefully look into this matter.  My role as a potential
confidential informant has attracted the attention of the media as well as civil rights litigants.

It is my desire to handle this matter through the DOJ and not risk any on-going operations within the
United States and abroad or have the reputation of the Bureau damaged.  You may contact me at: (949)
735-5840.  Or email me at: chernenkoivan@yahoo.com.  Thank you.

## PROOF OF SERVICE

**SHORT TITLE OF CASE:**   Monteilh vs. FBI et al

**CASE NUMBER:**          **SACV 10-102-JVS(RNBx)**

I am a citizen of the United States and a resident of the County of Orange.  I am over the age of eighteen years and not a party to the above-entitled action; my business address is 1200 Main Street, Ste. H, Irvine, CA 92614.

On the date below, I served the following document(s):

- **SECOND AMENDED COMPLAINT FOR DAMAGES OF PLAINTIFF CRAIG F. MONTEILH**

addressed as follows:

| |
|---|
| Thomas K. Buck, Esq. <br> United Stated Attorney's Office <br> 312 N. Spring St. <br> Los Angeles, CA 90012 <br> Tom.Buck@usdoj.gov <br><br> Woodruff, Spradlin & Smart <br> Daniel K. Spradlin, Esq <br> 555 Anton Blvd #1200 <br> Costa Mesa, CA 92626-7670 <br> dspradlin@wss-law.com <br> T/ 714-558-7000 <br> F. 714-835-7787 |

__XXX__    BY U.S. MAIL. by depositing the sealed addressed envelope(s) containing the document(s) listed above with the United States Postal Service with the postage fully prepaid, and by registered or certified mail with return receipt requested.

__Xxx__     BY ELECTRONIC  TRANSMISSION by transmitting such document(s) by Electronic transmission to the email addresses listed above.

_____     BY PERSONAL SERVICE by personal delivery of such document(s) to the person(s) listed above.

   I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

   Executed on September 2, 2010, at Irvine, California.

_(Signature)_

Adam Krolikowski